MUNDY v. McDONALD.

1. ATTORNEY GENERAL—DUTY TO APPEAR IN CASES OF PUBLIC INTEREST—STATUTES.

Under 1 Comp. Laws 1915, § 132, and Act No. 232, Pub. Acts 1919, it is the duty of the attorney general to both prosecute and defend cases pertaining to the public interest of the State; a broad discretion being vested in him to determine what matters may, or may not, be of interest to the people generally.

2. SAME—CIRCUIT JUDGES—LIBEL—CRIMINAL LAW.

Since it cannot be said that the people of the State are not interested in the defense of an action for libel against a circuit judge growing out of proceedings for the discovery of crime conducted by him in his official capacity, under Act No. 196, Pub. Acts 1917, the trial court was not in error in denying plaintiff's motion to strike from the files the attorney general's motion to dismiss the action.

3. DISMISSAL—DEMURRER—PLEADING—PRACTICE.

Where the declaration affirmatively alleges all the facts necessary to present the question of a demurrer, a motion to dismiss, which is to all intents and purposes a demurrer, is authorized by the practice in this State.

4. SAME—ABSOLUTE PRIVILEGE—DEMURRER—PLEADING — AVERMENT OF MALICE—RULE.,

Where the circuit judge was acting in his official capacity in filing the alleged libelous statement, the privilege was absolute, and an averment in the declaration that he acted maliciously does not change the rule or take away the right to demur.

5. JUDGES—PRIVILEGE—JUDICIAL ACTS—LIABILITY.

Judges of courts of superior or general jurisdiction are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, if they have jurisdiction over the subject-matter.

6. SAME—LIABILITY FOR LIBEL.

The composing and filing in the clerk's office of certain findings by the circuit judge, in proceedings for the discovery of crime under Act No. 196, Pub. Acts 1917, were judicial acts and did not subject him to private liability in an action for libel based thereon.

Error to Kent; Lamb (Fred S.), J., presiding. Submitted October 28, 1921. (Docket No. 42.) Decided December 21, 1921. Rehearing denied February 8, 1922.

Case by Robert V. Mundy against John S. McDonald for libel. From an order granting a motion to dismiss, plaintiff brings error. Affirmed.

*Collins & Thompson,* for appellant.

*Merlin Wiley,* Attorney General, and *Ernest C. Smith,* Assistant Attorney General, for appellee.

STONE, J. This case is in this court upon writ of error, sued out by the plaintiff, to review an order and judgment of the circuit court for the county of Kent sustaining a motion, in the nature of a demurrer, to

dismiss the suit. At and before the time of the commencement of this suit, plaintiff was and had been for some time the mayor of Bay City, and he was at the time of the committing of the acts complained of a candidate for the office of commissioner of that city. Some time prior to March 26, 1921, Lewis J. Weadock, assistant prosecuting attorney for Bay county, had filed in the circuit court for said county a complaint under Act No. 196, Pub. Acts 1917, entitled:

"An act to authorize proceedings for the discovery of crime, and to provide penalties for a violation of such procedure."

The defendant was, at and before the time alleged, and still is, one of the judges of the circuit court for the county of Kent. He was, as such judge, regularly called to sit and hear and conduct said proceedings. It appears that testimony was taken before him, and no formal complaint was filed or warrants issued. At the termination of the proceedings the defendant, as such circuit judge, on March 26, 1921, filed in the office of the clerk of the circuit court of Bay county the statement or report found in the record, the publication of which is complained of in the declaration herein, as follows:     .

That the defendant "on to-wit, the 26th day of March, A. D. 1921, falsely, wickedly and maliciously did compose and publish, and cause and procure to be published of and concerning the said plaintiff, a certain false, scandalous, malicious and defamatory libel; did falsely, wickedly and maliciously procure said false, scandalous, malicious and defamatory libel to be placed in the files of the circuit court for the county of Bay; said false, scandalous, malicious and defamatory libel being in the following form."

(Here follows the statement or document complained of, which is too lengthy to be inserted in full. We make the following extracts from the document:)

"Charges Against Mayor.

"The specific charges upon which Mayor Mundy should be tried are:

"*First.* That he had knowledge of the fact that the liquor laws were being openly violated in Bay City and made no reasonable effort to prevent it.

"*Second.* That he had knowledge of the fact that gambling in various forms were being carried on and that houses of prostitution were being conducted and took no action toward the suppression of such violations.

"*Third.* That he violated the provisions of Act No. 338 of the Public Acts of Michigan for the year 1917, because of his failure to strictly enforce the provisions therein contained for the suppression of the use and sale of liquor.

"*Fourth.* That he knew the police officers were neglecting their duty in the matter of the enforcement of the laws against gambling, prostitution and the use and sale of liquor and did not proceed against them as he was required to do under sections 45 and 49 of chapter 4 of the Bay City charter.

"*Fifth.* That he was not at all times vigilant and active in the enforcement of the laws as required by section 45, chapter 4 of the charter.

"*Sixth.* That he did not summon meetings of the council of Bay City, or its police committee to assist in the suppression of crime and took no other action to properly enforce the law and discharge the duties imposed on him by the charter of Bay City and the laws of this State.

"*Seventh.* That as mayor of Bay City he adopted a policy of liberality toward the commission of the crimes above mentioned and encouraged the police officials in their neglect to enforce the law.   *   *   *

"My determination of the facts brought out on this investigation furnish no reason for the issuance of criminal process against any of the parties involved. The said Robert Mundy, Chief of Police Davis and Captain Ripsky being guilty only of a wilful neglect in the duties of their respective offices, I therefore do not return any indictments or presentments to this court, but submit these findings that they may

be transmitted to the only tribunal having jurisdiction in the ouster of city officials.

"Dated March 26, 1921.

"JOHN S. MCDONALD,
"Circuit Judge."

On April 6, 1921, this action was begun in the Kent circuit court. On April 21, 1921, the attorney general of this State, as such, and one of his assistants in his official capacity, filed in said court a motion to dismiss this action, for the reason that the declaration of the plaintiff was not sufficient in law because the declaration shows that the defendant was acting as circuit judge of Bay county, Michigan, at the time of the alleged libel, and then and there published the matter alleged as libelous in the plaintiff's declaration in the exercise of his functions as a circuit judge.

On April 22, 1921, the attorneys for plaintiff filed a motion to strike the above motion of the attorney general from the files of the court. Thereupon, the attorney general made and filed an affidavit in said cause, setting forth that as such officer he was requested by Samuel G. Houghton, circuit judge of Bay county, to appear for and on behalf of the people of the State of Michigan in a certain proceeding to be conducted in Bay county under said Act No. 196; that on account of such request by Judge Houghton, and in the exercise of the discretion vested in him as attorney general in such matter, he did, on or about March 7, 1921, undertake to conduct such proceedings in Bay county on behalf of the people of said State; that the defendant circuit judge of Kent county was sent by the presiding judge to sit as the circuit judge in such proceeding, and that deponent was represented in such proceedings by his assistant, Ernest C. Smith; that such proceedings terminated in Bay county on or about March 21st, at which time the defendant, as circuit judge, returned

certain findings directing removal proceedings against the plaintiff and other officers by reason of their alleged neglect to enforce the criminal laws of this State; that the said findings had to do with the lack of proper enforcement of the criminal laws and charged a wilful neglect of duty upon certain officers, including the plaintiff; that the aforesaid findings are set forth in the declaration in this cause and are the bases of plaintiff's cause of action; that deponent had tendered his services to the defendant in this case, deeming it to be a matter of vital interest to the people of this State and a matter in which the public is vitally interested, viz., the legitimate protection and defense of all public officers in their legitimate acts in the enforcement of the criminal laws of the State; and deeming it also a matter of vital importance to the people of the State that proper proceedings should be taken against public officers who wilfully fail and neglect their duties in the enforcement of the criminal laws. As the plaintiff's declaration sets up an alleged cause of action arising out of proceedings officially conducted by the deponent, and as the subject-matter of the case is inseparably connected with the acts of a State officer engaged in proceedings to discover crime, and likewise involves matters pertaining to the neglect of public officers to enforce laws against crime, deponent had deemed this to be a proceeding in which the public was interested to such an extent as not only to warrant, but to require, the exercise of not alone a discretion, but a duty to protect the public interests involved or threatened; and that therefore he had appeared officially in this proceeding and had directed his assistant to take full charge of the same on behalf of the defendant herein.

The case came on to be heard on the two motions

referred to; and on May 10, 1921, the court below filed its order denying plaintiff's motion to strike the motion of the attorney general from the files, and on the same day filed its order and judgment dismissing plaintiff's declaration. Counsel for appellant say that the assignments of error present the three following questions:

"(1) Can the attorney general of the State of Michigan, as such, defend a case of this character?

"(2) Is the motion to dismiss under the circumstances of this case, a proper procedure authorized by our rules and practice?

"(3) Is the defendant amenable to a case for libel under the circumstances of this case?"

1. It is urged by appellant's counsel, after reference to the statute pertaining to the duties of the attorney general, that there is no statutory duty devolving upon that officer to justify his appearing in this case. It is urged that the authority for the intervention of the attorney general, as such, in this case must be found either in the statutes of this State or in the broad domain of public policy, and that under neither of said heads can the practice be sustained. We do not agree with counsel in this contention. A reference to the statute (1 Comp. Laws 1915, § 132) and Act No. 232, Pub. Acts 1919, make it a duty of the attorney general to both prosecute and defend cases pertaining to the public interest of the State, the language of the statute being:

"In any cause or matter, civil or criminal, in which the people of this State may be a party or interested."

A broad discretion is vested in this officer in determining what matters may, or may not, be of interest to the people generally. We must recognize the fact that the office of attorney general is ancient in its origin and history, and it is generally held by the States of the Union that the attorney general has a

wide range of powers at common law.    These are in
addition to his statutory powers.    See 6 C. J. p. 809,
and cases cited; 2 R. C. L. 916.    It is too narrow a
view of the case to say that the people of this State
are not interested in the defense in a case of this
nature, which involves the purely legal question of
the regularity of the criminal proceeding conducted in
the circuit court wherein the attorney general was
acting on behalf of the people.    Certainly if the people
of the State can be said to be interested in a criminal
proceeding, they are, we think, equally interested in
this action growing out of it, depending as it does
entirely upon whether the acts of the defendant com-
plained of were judicial acts.    We do not think the
court erred in denying plaintiff's motion to strike the
motion of the attorney general from the files.    It will
be noted that the motion is entitled in the cause using
the words:    "Comes now the said defendant and
moves the court," etc.    We fail to see wherein appel-
lant was prejudiced by the ruling of the court in this
regard.

2. It is the contention of plaintiff's counsel that the
motion to dismiss was not the proper procedure under
our practice.    We cannot agree with this contention.
In our opinion the declaration affirmatively alleges all
the facts necessary to present the question of a de-
murrer.    It alleges:

"And whereas, the defendant at the time of the com-
mitting of the grievances hereinafter set forth, was
conducting a grand jury inquiry under the provisions
of Act No. 196 of the Public Acts of 1917 in the circuit
court for the county of Bay, etc.,    *   *   *   did
falsely, wickedly and maliciously procure said false,
scandalous, malicious and defamatory libel to be placed
in the files of the circuit court for the county of Bay;
said false, scandalous, malicious and defamatory libel,
being in the following form:"

The entire matter thus complained of as libelous

is therein fully set forth and is signed by "John S. McDonald, circuit judge." It is idle to claim that there is nothing in the record to show that the circuit judge of Bay county was not present and presiding over his court. Manifestly, there can be no need of extrinsic evidence to establish the situation, viz., that the defendant was a circuit judge sitting in the circuit court for the county of Bay, and conducting the inquiry alleged, and that in what he did, he did acting as a circuit judge. The motion is to all intents and purposes a demurrer and is authorized by our practice.

It is further contended that "where the complaint contains an averment that the plaintiff acted maliciously, the demurrer admits this allegation, and thus prohibits the raising of the questions of privilege as privilege is inconsistent with express malice," and *Eviston* v. *Cramer*, 47 Wis. 659 (3 N. W. 392), is cited. A reference to that case will show that the court was speaking of a qualified privilege, and the case is readily distinguished. In case of an absolute privilege the weight of authority is to the effect that the qualifying words do not change the rule or take away the right to demur. The following cases are decisive of the question:

In *Spalding* v. *Vilas*, 161 U. S. 483 (16 Sup. Ct. 631), the question discussed arose on demurrer. Mr. Justice Harlan, in the course of his opinion, said:

"If, as we hold to be the case, the circular issued by the postmaster general to claimants under the acts of congress in question, was not unauthorized by law, nor beyond the scope of his official duties, can this action be maintained because of the allegation that what the officer did was done maliciously?"

Referring to the case of *Bradley* v. *Fisher*, 13 Wall. (U. S.) 335,

"which was an action against a justice of the supreme court of the district of Columbia to recover damages

alleged to have been sustained by the plaintiff 'by reason of the wilful, malicious, oppressive, and tyrannical acts and conduct' of the defendant, whereby the plaintiff was deprived of his right to practice as an attorney in that court, it was said that the qualifying words above quoted were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction were not liable to civil suits, for their judicial acts, even when such acts were in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. * * *

"The same principle was announced in England in the case of *Fray* v. *Blackburn*, 3 B. & S. 576, in which Mr. Justice Crompton said:

" 'It is a principle of our law that no action will lie against a judge of one of the superior courts for a judicial act, though it be alleged to have been done maliciously and corruptly; therefore the proposed allegation would not make the declaration good. The public are deeply interested in this rule, which, indeed, exists for their benefit, and was established in order to secure the independence of the judges and prevent their being harassed by vexatious actions.' "

In *Lange* v. *Benedict*, 73 N. Y. 12 (29 Am. Rep. 80), the question arose on demurrer to the complaint. The court said:

"We have seen, too, that the test is not that the act was in excess of jurisdiction, or alleged to have been done with malice and corruptly, for even if it is such an act it does not render liable the doer of the act, if he be a judge of a court of general or superior authority. *Bradley* v. *Fisher, supra.*"

In *Valesh* v. *Prince*, 159 N. Y. Supp. 598, there was a demurrer to the complaint in an action brought against a judge of the municipal court of New York city, to recover damages for an alleged libel, and in the course of the opinion, which sustained the demurrer, the court said:

"It would seem, therefore, that these statements were absolutely privileged, irrespective even of allegations charging malice, truth or relevancy."

We do not think that there is any merit in this claim.

3. Is the defendant amenable to a case for libel, under the circumstances of this case? This brings us to the main question in the case. The statute under which the defendant was proceeding (Act No. 196, Pub. Acts 1917) gives a "judge of a court of record" power to act, and it provides that the "proceedings to summon such witness and compel him to testify shall, as far as possible, be the same as proceedings to summon witnesses and compel their attendance and testimony." The power given "to the several circuit judges" to conduct examinations in criminal cases is of long standing (3 Comp. Laws 1915, § 15665 *et seq.*).

That defendant acted in a judicial capacity cannot, we think, be questioned. What he did, he did as a circuit judge. The statute gave him power to conduct the proceedings. The principle that judges and courts of superior jurisdiction are immune from actions based upon judicial acts may be said to be as old as the beginning of the English common law.

In Newell on Slander and Libel (3d Ed.), § 520, the rule is stated as follows:

"In England, and generally in the United States, a judge of a court has an absolute immunity, and no action can be maintained against him, even though it be alleged that he spoke maliciously knowing his words to be false, and also that his words were irrelevant to the matter in issue before him, and wholly unwarranted by the evidence."

In the recent case of *Thomas* v. *Rosecrantz*, 193 Mich. 357, in speaking of the power and jurisdiction of a circuit judge, we pointed out the distinction between the effect of an order to admit to bail in a *capias* action, made by a circuit judge, and one made by a circuit court commissioner. Referring to the case of

*Johnson* v. *Morton,* 94 Mich. 1, Mr. Justice STEERE said:

"It was held, even though the writ had been vacated and proceedings quashed, the order to hold to bail made by the circuit judge protected the party applying for the writ.  Of the affidavit this court said:

" 'It is evident that this affidavit lacks in detail and in certainty, and for that reason it is insufficient; but it cannot be said that it sets forth no facts or circumstances indicating fraud or breach of trust'—

which was the tort charged.  Holding that the affidavit had a legal tendency to make out a case inasmuch as the facts and circumstances indicated fraud and breach of trust, the court said in conclusion:

" 'The determination of the judge must be held to have all the qualities of a judicial decision, and as such protects the judge, the officer, and the party.' "

In the *Thomas Case* Mr. Justice STEERE later referred to the early case of *Ward* v. *Cozzens,* 3 Mich. 251.  There the order was made by a judge of the United States circuit court for the district of Michigan.  Of such courts it was said they

"are courts of limited but not inferior jurisdiction. Their limitation applies to the persons of the parties and the subject-matter of the action.  When, therefore, these come within their jurisdiction, they stand upon the same footing of all other superior courts of general common-law jurisdiction.  *  *  *  a *capias ad respondendum* is a process of that court.  But it is insisted that the affidavit did not disclose such a state of facts as authorized the making of the order.  If that be so, the judge erred.  It was a matter submitted to his judgment, he acted upon it, and made the order."

In concluding the opinion in the *Ward Case* the following general rule was stated:

"All the authorities are very clear, that a judge of a court of record cannot be held responsible for any acts done by him in his official capacity, and they are

equally clear, that in no instance can his orders, judgments or decrees be treated as nullities (citing many cases).

"The foregoing authorities establish this proposition, that in all cases where the parties act within the power and scope of an order of the superior court, without reference to their jurisdiction, and of an inferior court when having jurisdiction, they are protected. The same immunities that are extended to the members of the respective courts are extended to the parties."

See, also, *Schultz* v. *Huebner*, 108 Mich. 274; *Hall* v. *Munger*, 5 Lansing (N. Y.), 100.

In the early case of *Hart* v. *Baxter*, 47 Mich. 198, Mr. Justice COOLEY refers to the case of *McLaughlin* v. *Cowley*, 127 Mass. 316, for a clear statement of the general rule. It is there stated:

"It was stated in the opinion of this court in the recent case of *Rice* v. *Coolidge*, 121 Mass. 393, that it seems to be settled by the English authorities that judges, counsel, parties and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings; and that the same doctrine is generally held in the American courts, with the qualification as to parties, counsel and witnesses, that their statements made in the course of an action must be pertinent and material to the case."

The case of *Bradley* v. *Fisher*, 13 Wall. (U. S.) 335, is a leading case upon this question. There the plaintiff, an attorney at law, threatened the defendant, a judge of the criminal court of the District of Columbia, with personal chastisement on account of his rulings in a case wherein the plaintiff was an attorney, and the defendant was presiding judge. This occurred outside the court. The defendant without notice to the plaintiff, and without any hearing in the matter, entered an order striking plaintiff's name from the roll of attorneys. For this act plaintiff sued defendant in tort,

alleging the act to be unlawful, malicious and corrupt. It was held that the action was not maintainable, although it was expressly conceded that the court had no jurisdiction to make such an order without notice to plaintiff and hearing thereon. The general subject-matter of striking an attorney's name from the rolls was within the jurisdiction of the court, and defendant's act in so striking was in excess of jurisdiction and not entirely without jurisdiction.

In that case Mr. Justice Field in the course of the opinion said:

"In other words, it (the plea) sets up that the order for the entry of which the suit was brought was a judicial act, done by the defendant as the presiding justice of a court of general jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it, in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in executing the authority vested in him, shall be free to act upon his own convictions without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility. *Taaffe* v. *Downes*, 3 Moore, P. C. 41, n.

"The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this

country.    It has, as Chancellor Kent observes 'a deep root in the common law.'    *Yates* v. *Lansing,* 5 Johns. (N. Y.) 291.

"Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed.    The purity of their motives cannot in this way be the subject of judicial inquiry."

Many English and American cases are discussed. We invoke a careful reading of the remainder of this able opinion.    It is too lengthy to be copied here.    It is there further held that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction.    A distinction is pointed out between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.

One of the early leading cases in this country is that of *Yates* v. *Lansing,* 5 Johns. (N. Y.) 282.    Chief Justice Kent delivered the opinion.    We invite perusal of the case.

A comparatively late case is that of *Spalding* v. *Vilas, supra.*    The opinion was written by Mr. Justice Harlan, and it is worthy of examination as covering the entire subject here involved, and especially holding that judges of courts of superior or general jurisdiction are not liable to civil suit for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.    The following additional cases bear upon the main question:    *Flynn* v. *Boglarsky,* 164 Mich. 513 (32 L. R. A. [N. S.] 740) ; *Wells* v. *Toogood,* 165 Mich. 677; *Lange* v. *Benedict,* 73 N. Y. 12, 28; *Aylesworth* v. *St. John,* 25 Hun (N. Y.), 156; *Marsh* v. *Ellsworth,* 50 N. Y. 309; *Busteed* v. *Parsons,* 54 Ala. 393 (25 Am. Rep. 688) ; *Dunham* v. *Powers,* 42 Vt. 1; 17 R. C. L. p. 333 *et seq.*

Under the foregoing authorities it must be held that

the composing of, and filing in the clerk's office of, the findings complained of as libelous, were judicial acts requiring a decision on the part of the judge as to the proper course to be pursued.    To hold that the acts were in excess of jurisdiction, and, therefore, for that reason subject the judge to private liability, is to say that courts and judges must decide questions of jurisdiction at their peril.    Such a doctrine would, in a large measure, destroy the independence of the judiciary, and take away the immunity and privilege considered so essential and necessary. to the proper and just administration of law.

But it is urged by plaintiff's counsel that the case is ruled and controlled by the cases of *Bennett* v. *Kalamazoo Circuit Judge,* 183 Mich. 200 (Ann. Cas. 1916E, 223) ; *Bennett* v. *Stockwell,* 197 Mich 50 (L. R. A. 1917F, 761, Ann. Cas. 1918E, 1193), and *Oakman* v. *Recorder of Detroit,* 207 Mich. 15.    We cannot agree with this contention.    Upon that subject the learned circuit judge, in his opinion in the instant case, said:

"Neither of these cases, is any assistance to us in the determination of the questions involved herein. In the *Bennett-Stockwell Case* the defendants (grand jurors) made a report to the court under which they were acting, upon a matter which had not been referred to them by anyone, and upon which no proofs were taken by anyone.    In the *Oakman-Recorder Case,* the findings of the recorder as filed in his court were stricken from the files, the filing of the same being without authority of law, and upon which no action in which the plaintiff could have had his day in court, was taken thereon.    There is nothing in that case that can possibly give us any light upon whether the recorder had laid himself liable to an action for libel by so doing, or whether he would be protected by the immunity which public policy throws around the acts and the exercise of judgments of the judges."

The *Bennett Cases* are so readily distinguished that

no argument is necessary. In the *Oakman Case* attention was called to the long time which elapsed between the filing of the so-called "presentment" and the issuing of warrants, and this court said:

"We believe that the subsequent, though tardy, issuance of warrants does not validate an act which at the time of its performance was unwarranted."

In the instant case the findings complained of were filed on March 26th, and the instant suit was begun April 6, 1921. As stated by the attorney general, the defendant was

"administering the provisions of a statutory enactment, and the findings are made not as a conclusion and end of a course of proceedings, but as the foundation and commencement of proceedings for removal from office for violation of the penal laws of the State, and the necessary steps are taken to commence the proceeding by filing of the complaint in the only proper tribunal, the common council, for the trial and adjudication of plaintiff's alleged offenses, subjecting him to removal from office."

For the reasons stated, the order and judgment of the court below should be and are affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.