Christie v. Kun

*Ada A. Christie*, p. p.

*C. Brewster Rhoads*, for defendant.

OLIVER, P. J., November 10, 1954.—On July 14, 1954, plaintiff, a woman of advanced years, filed a complaint in trespass seeking damages in the sum of $25,000 from defendant on the ground that on August 11, 1953 "while the plaintiff was properly before said Court of Common Pleas No. 1, pursuant to the defense of an action instituted against her involving an unlawful seizure of her personal property and records necessary to the ordinary conduct of her business, the said defendant, Joseph L. Kun, then presiding jurist, denied to plaintiff her constitutional right of defense without heeding her cause, and likewise denied plaintiff her right to present same, and did, then and there, erupt in an insensate tirade of verbal abuse of plaintiff, and did, then and there, maliciously, vociferously, and with personal malice, shout at plaintiff, 'You're a crook!' thereby, by innuendo, proclaiming plaintiff a 'swindler and a thief'."*

Plaintiff further averred that she suffered irreparable injury because, for the past 10 years she has been and still is, engaged in a business rendering special-

---

\* In justice to both parties, it should be stated that, subsequent to this decision exonerating him from liability, Judge Kun filed of record in this case a statement expressing regret for the language he had used with reference to Miss Christie. He also added that his comment respecting Miss Christie "was made without full understanding of the situation then presented." He concluded: "I hereby retract my statement then made and any inferences which could be taken from it, and I have no objection to having my retraction made a matter of record."

ized service to attorneys in Philadelphia County and elsewhere and the verbal abuse of which she complains was declared publicly in open court in the presence of approximately 50 members of the Philadelphia bar and divers other persons.

Defendant, instead of filing preliminary objections to the complaint, in the nature of a demurrer, filed an answer and new matter, denying malice and slander, modifying the language he is charged with having used in addressing plaintiff, and averring, among other things, that his statements "were made in his capacity as presiding judge and were motivated solely by the intention of seeing that plaintiff conducted herself in a judicial proceeding in a proper manner".

With the door thus opened, plaintiff filed a lengthy reply placing many additional averments upon the record. Defendant then filed a motion for judgment on the pleadings, pursuant to rule 1034, and in support thereof assigned the following reasons:

"Defendant is privileged as to statements made, or action taken, as presiding judge in the course of a judicial proceeding within the jurisdiction of the court, and is immune from civil liability."

It was conceded at the time of oral argument of this motion that we must, wherever variances occur, accept plaintiff's version of the facts and not defendant's.

Plaintiff avers that a constable, David H. Brown, had made an unlawful and excessive levy upon all of her possessions on a landlord's warrant issued by Sherman & Sherman with whom she had no lease or other contract; that she filed a writ of replevin without bond in Court of Common Pleas No. 1 and then applied for permission to file a bond and to have the levy set aside. There then ensued several hearings in court and various attempts at settlement. Finally, plain-

tiff gave to counsel for defendants a postdated order to the prothonotary to mark the case settled; but, plaintiff avers, her order was "conditioned upon certain performance of Sherman and Brown in the interim". When those parties failed to comply with their agreement in this respect, plaintiff, after notifying their counsel of her intention to do so, filed an order with the prothonotary not to honor the postdated order. A petition was then filed by counsel for defendants, Sherman & Sherman and Brown, for a rule on plaintiff to show cause why her last-mentioned order should not be stricken and deleted from the docket. Plaintiff promptly filed a reply denying certain of the material averments in the defendants' petition and again averring that defendants had failed to comply with the conditions imposed when she gave the postdated order. She asked that defendants' rule be discharged and that she be permitted to proceed with an appeal from the action of the court in the replevin suit.

Plaintiff is not a member of the bar, and she was acting as her own attorney to the best of her ability in a matter in which it is obvious, from the pleadings, she believed she had grievously been wronged.

At the first call of the motion list on August 11, 1953, presided over by defendant, defendant, "without hearing or heeding plaintiff, did erupt in an insensate tirade of verbal abuse of plaintiff and did shout at plaintiff, 'You're a crook', and did, without hearing plaintiff's cause make 'absolute' the alternative rule filed by Mr. Goldberg (counsel for defendants in the replevin action) thus delivering to plaintiff's opponents title to all of plaintiff's goods and chattels and putting the court's seal of approval on the breaking into and entry of plaintiff's premises and the unlawful removal of all her possessions".

Plaintiff further avers that defendant prejudged her case, deciding it without hearing her. To support

that allegation she attaches a copy of a letter dated August 18, 1953, sent to her by defendant, in which he states:

"You must understand that your conduct is quite irregular when, after having given an order to discontinue your action, you then write to the Prothonotary countermanding your authorization. The Court was fully aware of your answer to the plaintiff's petition, which had been brought to the attention of a member of the Court by the Prothonotary, on whose advice the rule to strike it from the record was taken."

There is, of course, nothing improper or irregular in countermanding an order given the pronothary, provided such action is taken for just and proper cause. That was the very heart of the problem before the court for judicial determination. The brushing aside of plaintiff and the deciding of that issue against her without hearing, coupled with the use of abusive language in the presence of a courtroom full of attorneys and other parties gave her just cause to feel injured and aggrieved.

As above pointed out the foregoing recital of facts is, and necessarily has to be, based upon averments by plaintiff. The question is whether, assuming her averments to be true, she has any cause of action against defendant.

After a careful review of the authorities, we find that a judge has absolute privilege, protection and immunity from civil liability for any words spoken by him as presiding judge in the course of any judicial proceeding within the jurisdiction of the court.

The immunity of a judge from civil suit for any statement made in the course of a judicial proceeding is deeply rooted in the common law. In the words of Chief Justice Kent in Yates v. Lansing, 5 Johns 282, 291 (N. Y.):

"It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed

current of decisions in the English courts, amidst every change of policy, and through every revolution of their government. A short view of the cases will teach us to admire the wisdom of our forefathers, and to revere a principle on which rests the independence of the administration of justice."

The A. L. I. Restatement of the Law of Torts, §585, sets forth that the privilege of a judge engaged in the performance of his judicial functions is absolute. This is so even though the judge bears personal ill-will or knows the defamatory remark made to be false. In the words of the comment to the above section:

"The public interest in securing the utmost freedom to those who preside over judicial proceedings or who otherwise perform a judicial function is so important as to preclude inquiry in a civil action into the motive or purpose of such an officer. Abuse of his official position by a judicial officer may subject him to impeachment, recall or removal, but it will not subject him to a civil action for defamation."

In Karelas v. Baldwin, 237 App. Div. 265, 261 N. Y. Supp. 518 (1932), defendant justice of the peace, before whom plaintiff was arraigned on a charge of assault in the third degree, stated:

"You are a liar. You are only a paper citizen. I have been in Greece and I know what the Greeks are like. You are a disgrace to the community and should be run out of the whole country."

The trial court accorded to defendant the defense of privilege, provided the jury found that the remarks were pertinent or relevant to the judicial proceeding. A jury found that the foregoing words spoken in the course of a judicial proceeding were slander and that the words were not pertinent nor relevant, and rendered a verdict in favor of plaintiff for damages. The judgment was reversed and the complaint dismissed. Justice Carswell stated:

". . . the remedy for judicial misconduct is not by a civil action. This is shown by an examination of the authorities and reasons underlying them. A justice of the peace may be disciplined by censure or removal by this court: (Code Crim. Proc. §132): Other judges are subject to similar discipline under statutory and constitutional provisions."

The opinion of Justice Carswell concluded as follows:

"It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law independently and freely, without favour and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. How could a judge so exercise his office if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him? Again, if a question arose as to the bona fides of the judges it would have, if the analogy of similar cases is to be followed, to be submitted to the jury. Thus, if we were to hold that an action is maintainable against a judge for words spoken by him in his judicial capacity, under such circumstances as those appearing on these pleadings, we should expose him to constant danger of having questions such as that of good faith or relevancy raised against him before a jury, and of having the mode in which he might administer justice in his court submitted to their determination. It is impossible to overestimate the inconvenience of such a result. For these reasons I am most strongly of opinion that no such action as this can, under any circumstances be maintainable.

"The public mischief which would ensue from permitting civil actions of this sort to be brought against judicial officers far outweighs the private inconvenience or damage to individuals who may deem themselves aggrieved by judicial conduct."

In Mundy v. McDonald, 216 Mich. 444, 185 N. W. 877 (1921) the action of the circuit court in sustaining a demurrer to dismiss the suit was affirmed. Defendant was a circuit judge at the time of the alleged libel. Justice Stone relied upon the leading case of Bradley v. Fisher, 13 Wall. 335. In that case plaintiff, an attorney, threatened defendant judge with personal chastisement on account of his rulings in a case. This occurred outside the court. Defendant, without notice or hearing, entered an order striking plaintiff's name from the roll of attorneys. Thereupon, plaintiff sued defendant, alleging his act to be unlawful, malicious and corrupt. It was held that the action was not maintainable, although it was conceded that the court had no jurisdiction to make such an order without notice or hearing. The general subject matter of striking an attorney's name from the rolls was within the jurisdiction of the court, although defendant's act was in excess of jurisdiction. In that case Mr. Justice Field said:

"In other words, it (the plea) sets up that the order for the entry of which the suit is brought was a judicial act, done by the defendant as the presiding justice of a court of general criminal jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be

free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility. Taaffe v. Downes, 3 Moore, P. C. 41, n. The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes 'a deep root in the common law'. Yates v. Lansing, 5 Johns. (N. Y.) 291. Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry."

In Bolton v. Walker, 197 Mich. 699, 164 N. W. 420, Ann. Cas. 1918 E 1007 (1917), it was held that defamatory words spoken before a board which had a legislative or judicial function were privileged. The court cited with approval the general rule stated in Newell on Slander and Libel (3d ed.), §506:

" 'All actions for words so spoken are absolutely forbidden, even if it be alleged and proved that the words were spoken falsely, knowingly, and with express malice. This rule is, however, confined to cases in which the public service or the administration of justice requires complete immunity—for example, words spoken by a judge on the bench. . . . In all such

cases the privilege afforded by the occasion is in law an absolute bar to an action for defamation. In these cases the plaintiff cannot be heard to say that the defendant did not act under the privilege, that he did not intend honestly to discharge a duty, but maliciously availed himself of the occasion to injure his reputation.' That doctrine is discussed and finds support in Wachsmuth v. Bank, 96 Mich. 426 (56 N. W. 9, 21 L.R.A. 278); Trebilcock v. Anderson, 117 Mich. 39 (75 N.W. 129), and Madill v. Currie, 168 Mich. 561 (134 N. W. 1004). . . ."

The opinion in Brictson v. Woödrough et al. 164 F. 2d 107 (8th cir., 1947) contains interesting language. The suit was against a United States circuit judge and several State judges. The court concluded:

"Resting on considerations of public policy to the end that the administration of justice may be independent and based on the free and unbiased convictions of the judge, uninfluenced by apprehension of personal consequences, it is a general rule that, where a judge has jurisdiction over the subject matter and the person, he is not liable civilly for acts done in the exercise of his judicial function, even though he acts erroneously, illegally, or irregularly, or even corruptly."

33 Am. Jur. §177 states:

"The view is generally taken both in England and the United States, that no action lies for slanderous words spoken by a judge in the course of a judicial proceeding over which he is presiding, and in relation to the subject of the proceeding, such words being absolutely privileged, irrespective of their legal or technical relevancy to the issues involved and irrespective of malice."

We have found no case in Pennsylvania directly in point. However, the opinion of our Supreme Court in Matson v. Margiotti, 371 Pa. 188 (1952), shows that our courts also have always recognized the doc-

trine of absolute privilege. That case involved an action for libel filed against the Attorney General of Pennsylvania. The court said:

"Defendant contends he is entitled to 'absolute privilege' and hence absolute immunity from civil suit. *Absolute privilege*, as its name implies, is unlimited, and exempts. a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as is sometimes expressed, within his jurisdiction"*: Pages 193-94.

"This absolute privilege applied originally to only three classes: (1) Proceedings of legislative bodies, (2) *judicial proceedings*, (3) communications by military and naval officers: 53 C. J. S. §102, page 164; Newell, Slander and Libel, 3rd ed., §506": Pages 195-96.

*"There is no doubt,* as appellant concedes, *that the Attorney General, when acting officially, and within the scope of his authority, has absolute privilege, protection and immunity from civil liability with respect to his official communications and his official acts. . . ."*

"We are all unanimously of the opinion that the Attorney General has no right or power to discharge or compel a District Attorney to discharge an Assistant District Attorney from her official position . . . the Attorney General might have no right to discharge plaintiff, but might have had a right and a duty to notify the District Attorney of facts which he believed justified her discharge": Pages 197-98.

"As the chief law enforcement officer of this Commonwealth, it was the right, privilege and we believe the duty of the Attorney General to call to the attention of the District Attorney of any county facts or charges

which disclose that one of the assistant district attorneys was, for example, a dangerous criminal, or as in this case, was allegedly engaged in communistic activities and request or demand his or her dismissal. . . . We specifically hold that this official letter, being written by a public official in the course and within the scope of his powers, was 'absolutely privileged'; and that even if the allegations were erroneous and false, and were maliciously made, this privilege was absolute and constituted a complete defense to Mrs. Matson's action of libel": Page 202.

". . . the authorities almost universally hold, as hereinabove stated, that statements or acts of high public officials which are made in the course of and within the scope of their official powers or duties give them complete immunity from legal redress. Even though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel, or malicious prosecution suits where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished": Page 203.

In Allen v. Biggs et al., 62 F. Supp. 229, 230 (1945), Judge Ganey, in the District Court for the Eastern District of Pennsylvania, recently said:

"It has been held from the early beginning of the English common law down to the most recent decisions that a judge cannot be sued, civilly, for any act done by him in the performance of his duties even though the act was deliberate and malicious."

Plaintiff seeks to overcome the effect of this universally accepted doctrine on several grounds, which we shall discuss briefly.

In her reply to new matter, she denies that any judicial proceeding relative to her cause was held on August 11, 1953. But, in paragraph 3 of her complaint she averred that the statements of which she complains were made "on the eleventh day of August, A. D. 1953, while plaintiff was properly before said Court of Common Pleas No. 1, pursuant to the defense of an action instituted against her involving unlawful seizure of her personal property and records".

In addition, in paragraph 4 of her reply to new matter, she avers that the defamatory statements were made "at the first call of the list for that day, to wit, August 11, 1953." Defendant, therefore, was concededly presiding in court and hearing the motion list when the words, whatever they were, were spoken. It is not unusual for judges so presiding to speed up matters by disposing of some of the pending motions on first call. The mere fact that a full hearing and more careful consideration should have been given to this particular motion does not change the fact, established by plaintiff's own averments, that defendant was the presiding judge, sitting in a court having proper jurisdiction and was hearing and disposing of matters, including plaintiff's, properly pending before him.

Plaintiff further contends that she is suing defendant as an individual and not as a judge; but we do not think there is any substance to that distinction. The absolute immunity is necessarily given to the man, who as judge, is alleged to have uttered the slanderous words. Otherwise it would have no value.

Plaintiff also contends that defendant by answering, instead of demurring, to her complaint, thereby waived his immunity. While we think the answer was unnecessary and perhaps unwise, as raising issues of fact, it does not in our opinion constitute a waiver. In fact, the answer expressly points out, as already conceded by plaintiff in paragraph 3 of her complaint, that

the statements were made in the course of a judicial proceeding pending before defendant as a judge and within the jurisdiction of the court. It then avers that, as to any such statements, defendant is immune from civil liability.

Plaintiff further contends that a lie is never privileged; that there can be no immunity where the words are deliberately malicious, and that before immunity can be granted it must be shown that the remarks were pertinent and relevant. Those contentions would be convincing if a judge were accorded only limited immunity, such as that granted to an attorney, but obviously have no bearing where the immunity is, as in the present case, absolute.

And now, November 10, 1954, judgment is entered on the pleadings in favor of defendant and against plaintiff. Complaint dismissed.

### OPINION AND ORDER

PER CURIAM, November 26, 1954. — Plaintiff has filed a 10-page petition for reargument of defendant's motion for judgment on the pleadings. It should be dismissed for the following reasons:

In paragraph 6, and in several subsequent paragraphs of her petition, plaintiff seeks to place additional averments of fact upon the record. This matter was decided, and properly so, *upon the basis of plaintiff's averments of fact as of the time the motion for judgment was filed.* Plaintiff cannot, after judgment has been entered on the pleadings in favor of defendant, alter and amend or add to the averments of her original complaint and her reply to the new matter in defendant's answer.

In paragraph 7 of her petition, plaintiff relies upon article V, sec. 1, of our State Constitution, which vests the judicial power of this Commonwealth in its courts. Plaintiff mistakenly believes that defendant is claiming immunity because, as a judge, he is an agent or

officer of this Commonwealth. But defendant is not claiming a sovereign immunity; he is relying on the common law immunity accorded him as a judge.

Plaintiff avers that defendant could not properly file a motion for judgment on the pleadings in this case after he elected to file an answer, instead of a preliminary objection to her complaint as he might have done. There is no merit to that argument. Pa. R. C. P. 1017 provides:

"Pleadings allowed—The pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection, an answer thereto, and a motion for judgment on the pleadings."

Pa. R. C. P. 1034 provides:

*"After the pleadings are closed,* but within such time as not to delay the trial, any party may move for judgment on the pleadings." (Italics supplied.)

The phrase, "After the pleadings are closed", clearly refers to the pleadings allowed under rule 1017. There is nothing to indicate that the phrase, "After the pleadings are closed", should be read, "After a complaint and a preliminary objection . . .". The comment in 1 Goodrich-Amram Standard Pa. Practice makes this quite clear. There it is stated that the word "pleadings" in rule 1034 means, "those pleadings beginning with the complaint and *ending with* either the answer, *the reply* or the counter-reply, depending on the nature of the issues raised by the defendant. It refers to the situation where the case is 'at issue' and ready for trial." (Italics supplied.)

Therefore, defendant had the right to move for judgment on the pleadings after plaintiff had filed her reply to defendant's new matter.

This court in its opinion did not *decree* that "defendant's statements were motivated solely by his in-

tention of seeing that the plaintiff conducted herself in a judicial proceeding in a proper manner". Although reference was made in the opinion to that averment in the answer, we expressly held we were bound to accept, and in fact we did accept, plaintiff's version of the facts in ruling upon defendant's motion for judgment.

DiBona, Admr., v. Philadelphia Transportation Company, 356 Pa. 204, and Commonwealth v. Claiborne, 175 Pa. Superior Ct. 42, cited by plaintiff, do not in any way help her. They are merely cases in which our appellate courts rebuked a trial judge for improper language and conduct in matters pending before him. They do not support an aggrieved party's right to maintain a civil suit against a judge for the recovery of damages.

In Old Colony Trust Company v. City of Seattle et al., 271 U. S. 426, 46 Supreme Court Rep. 552, cited also by plaintiff, suit was brought against agents of a State to restrain them from unlawful acts threatened and attempted under color of their agency. Defendants defended on the ground that, as agents of a sovereign State they were entitled to sovereign immunity. The Supreme Court of the United States held that a suit against agents of a State is not necessarily a suit against the State itself. But, as already pointed out, in the matter before us defendant is not relying on sovereign immunity. He does not claim he is immune from civil suit because he is an officer of the Commonwealth. He contends he is immune from such suit on the ground that an absolute privilege and an immunity attaches to words spoken by a judge in the course of a judicial proceeding, in a matter over which he is presiding, within the jurisdiction of his court.

The fact that plaintiff is not an attorney was pointed out in this court's opinion, not, as plaintiff charges, to minimize the importance of her pleadings, but merely to suggest that the defendant, when acting upon the

pleadings, should have reviewed them with a more liberal and understanding attitude of mind than if they had been filed by an experienced attorney.

And now, November 26, 1954, plaintiff's petition for reargument is dismissed.