115 F.3d 386
 21 Employee Benefits Cas. 1186,
3 Wage & Hour Cas.2d (BNA) 1668,
Pens. Plan Guide (CCH) P 23934U
 ASSOCIATED BUILDERS AND CONTRACTORS, SAGINAW VALLEY AREA
CHAPTER, Plaintiff-Appellee,
v.
Lowell W. PERRY, Director of the Department of Labor, State
of Michigan, Defendant,
Michigan State Building and Construction Trades Council,
AFL-CIO (95-2226; 96-1236), Intervenor-Appellant,
Donald Willard (95-2224; 96-1189), Proposed Intervenor-Appellant,
Frank J. Kelley, Attorney General for the State of Michigan
(96-1190/1466), Proposed Intervenor-Appellant.
 Nos. 95-2224, 95-2226, 96-1189, 96-1190, 96-1236 and 96-1466.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 3, 1997.
Decided June 5, 1997.
 
 ARGUED: David J. Masud, Masud, Gilbert & Patterson, Saginaw, Michigan, for Appellee. John R. Canzano, Klimist, McKnight, Sale, McClow & Canzano, Southfield, Michigan, George H. Weller, Office of the Attorney General, Lansing, Michigan, for Appellant. ON BRIEF: David J. Masud, Masud, Gilbert & Patterson, Saginaw, Michigan, for Appellee. John R. Canzano, Klimist, McKnight, Sale, McClow & Canzano, Southfield, Michigan, George H. Weller, Office of the Attorney General, Lansing, Michigan, Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for Appellant.
 Before: SILER, COLE, and VAN GRAAFEILAND*, Circuit Judges.
 OPINION
 VAN GRAAFEILAND, Circuit Judge.
 
 
 1
 The basic issue in the instant case is whether the district court erred in holding that Michigan's Prevailing Wage Act ("PWA"), Michigan's Compiled Laws Annotated §§ 408.551 et seq., has been preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to section 514(a) of the federal act. 29 U.S.C. § 1144(a). Before attempting to resolve the uncertainty created by the ambiguous language of section 514(a), we must decide whether the issue is justiciable in this Court. The first section of this opinion therefore will deal with this question.
 
 Justiciability
 
 2
 The PWA, enacted in 1966, provides in substance that the wages and fringe benefits paid by contractors on State construction projects shall be not less than the wages and fringe benefits prevailing in the locality in which the work is to be performed. As described in the Stipulation of Facts received by the district court, the Act does not require the establishment of any fringe benefit program or plan. Neither does it require the creation of an entitlement to vacation pay, retirement pay, medical insurance, or any specific fringe benefit. It simply creates an employee entitlement to a specified total level of fringe benefits, its cash equivalent, or a combination thereof, when prevailing-wage work is being performed.
 
 
 3
 The PWA was administered by the Michigan Department of Labor ("DOL"), of which the defendant Lowell Perry was director. The DOL computed the prevailing wages and benefits in pertinent localities, and contractors were required to include in their total wage packet either a specified total level of fringe benefits, its cash equivalent, or a combination thereof. If a contractor paid less than the prevailing wages and benefits total as thus ascertained, the contracting agent might terminate the contractor's right to proceed with that part of the contract for which underpayments existed and complete the contract by separate agreement with another contractor, the original contractor being liable for any excess costs caused thereby. The offending contractor also might be guilty of a misdemeanor.
 
 
 4
 Associated Builders and Contractors, Saginaw Valley Area Chapter ("Associated"), a non-union trade association of construction contractors, brought this suit in the United States District Court for the Eastern District of Michigan on January 22, 1993 alleging in part that the PWA was preempted by ERISA. On September 2, 1993, Michigan State Building and Construction Trades Council, AFL-CIO ("the Council"), an unincorporated organization of labor unions representing building and construction workers, was permitted to intervene in opposition to Associated's suit. On April 21, 1994, the district court denied the Council's motion for partial summary judgment which sought dismissal of Associated's ERISA claim on the ground that Associated lacked standing.
 
 
 5
 We find no reversible error in this ruling. In the Sixth Cause of Action in Associated's complaint, Associated seeks a declaration that Michigan's PWA is invalid and an injunction restraining PWA's enforcement, on the ground that PWA deprives Associated's members of the rights, privileges and immunities secured them by the Constitution and federal laws, including ERISA. This cause of action does not request relief under 29 U.S.C. § 1132, the "Civil enforcement" section of ERISA, which is available only to participants, beneficiaries and fiduciaries. It asks instead for injunctive and declaratory relief from state regulation based on federal question jurisdiction. There is substantial authority in support of the district court's decision to accept such jurisdiction.
 
 
 6
 The district court relied principally upon the Supreme Court's opinion in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where the Court said:
 
 
 7
 It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See Ex parte Young, 209 U.S. 123, 160-162, 28 S.Ct. 441 [454-55], 52 L.Ed. 714 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.
 
 
 8
 Id. at 96 n. 14, 103 S.Ct. at 2899 n. 14. Numerous subsequent decisions have followed the Shaw Court's lead. See, e.g., Lawrence County v. Lead-Deadwood Sch. Dist. No. 40-1, 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985); Self-Insurance Inst. of America, Inc. v. Korioth, 993 F.2d 479, 481-83 (5th Cir.1993); Hydrostorage, Inc. v. Northern California Boilermakers Local Joint Apprenticeship Comm., 891 F.2d 719, 724-25 (9th Cir.1989), cert. denied, 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).
 
 
 9
 In the very recent case of California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), a contractor and subcontractor sought a declaratory judgment that California's prevailing wage law relating to apprentices was preempted by ERISA and that by attempting to enforce it California was interfering with federal rights established by ERISA. The district court, citing Shaw and the seminal case of Ex parte Young, said:
 
 
 10
 This Court has jurisdiction under 28 U.S.C. § 1331. Federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.
 
 
 11
 778 F.Supp. 1522, 1526 (N.D.Cal.1991). Although the Court of Appeals, 57 F.3d 712 (9th Cir.1995), and the Supreme Court differed on the issue of ERISA relationship, neither court questioned the district court's exercise of jurisdiction over the contractor-employers' case.
 
 
 12
 The interests of employers were considered and protected by Congress when it enacted ERISA. See Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323 (2d Cir.1982), aff'd mem., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). The district court did not err in assuming jurisdiction to ensure that the interests of Associated's members were not jeopardized by state interference with their federal rights.
 
 
 13
 On November 21, 1994, the district court granted summary judgment in favor of Associated on its preemption claim in a decision reported in 869 F.Supp. at 1239. Final judgment was entered in favor of Associated on December 9, 1994. On December 23, 1994, the Council moved for reconsideration and amendment of the judgment. The motion was denied on September 26, 1995, and the Council promptly appealed. In the meantime, defendant Perry decided not to appeal the adverse judgment, a decision in which Michigan's Governor, John Engler, concurred; and Frank Kelley, Michigan's Attorney General, decided to carry on the State's fight without their approval. On April 26, 1995, Kelley moved to intervene as a defendant for the purpose of appealing the December 9, 1994 judgment. This motion was denied on January 4, 1996. On February 2, 1996, Kelley timely appealed from both the January 4 order and the December 9 judgment. Associated challenges Kelley's authority to represent the State in this manner.
 
 
 14
 Citing our decision in Associated Builders & Contractors v. Perry, 16 F.3d 688 (6th Cir.1994) (Perry I ), Associated also contends that Council has no standing to appeal. Perry I involved ERISA's alleged preemption of provisions in Michigan's Electrical Administrative Act. The district court permitted the National Electrical Contractors Association to intervene as an additional defendant opposing preemption. When the district court subsequently ruled in favor of preemption, Michigan decided not to appeal. Thereafter, we rejected National Association's attempt to appeal. We said that standing in the district court does not necessarily equate with standing on appeal, and we held that the National Association could not seek to compel Michigan to retain and enforce a statute that the State no longer wished to retain and enforce. Id. at 691-93.
 
 
 15
 Using much the same argument, the district court in the instant case also rejected Donald Willard's application to intervene and appeal the judgment of preemption. Willard was a former construction employee who claims that he was underpaid for work performed under the aegis of the PWL. The district court held that Willard, like the National Association in Perry I, could not compel Michigan to enforce the provisions of a statute that the State itself did not wish to enforce.
 
 
 16
 It appears from the foregoing that our decision in Kelley's proposed appeal on behalf of Michigan may be dispositive of all three appeals. We therefore focus on Kelley's efforts as Attorney General of the State of Michigan.
 
 
 17
 In Michigan ex rel. Kelley v. C.R. Equipment Sales, Inc., 898 F.Supp. 509, 513-14 (W.D.Mich.1995), District Judge Benjamin Gibson, discussing the same Attorney General involved in the instant case, said:
 
 
 18
 Michigan's Attorney General has broad authority to prosecute actions when to do so is in the interest of the state. First, Michigan statutory law provides as follows:
 
 
 19
 The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party ... and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.
 
 
 20
 Mich. Comp. Laws Ann. § 14.28 (West 1994). In addition, "the attorney general has a wide range of powers at common law." Mundy v. McDonald, 216 Mich. 444, 450, 185 N.W. 877 (1921). Thus, the Attorney General "has statutory and common law authority to act on behalf of the people of the State of Michigan in any cause or matter, such authority being liberally construed." Michigan State Chiropractic Ass'n v. Kelley, 79 Mich.App. 789, 262 N.W.2d 676, 677 (1977) (citations omitted); see also Mundy, 216 Mich. at 450, 185 N.W. 877 (Attorney General has broad discretion "in determining what matters may, or may not, be of interest to the people generally.").
 
 
 21
 The Court should only prohibit the Attorney General from intervening or bringing an action when to do so "is clearly inimical to the public interest." In re Intervention of Attorney Gen., 326 Mich. 213, 40 N.W.2d 124, 126 (1949) (citation omitted); see also Michigan State Chiropractic Ass'n, 262 N.W.2d at 677. Although a procedural distinction exists between intervention and initiating an action, "there is merger of purpose, by reason of public policy, when the interests of the State call for action by its chief law officer and there is no express legislative restriction to the contrary." In re Lewis' Estate, 287 Mich. 179, 184, 283 N.W. 21 (1938).
 
 
 22
 See also Humphrey v. Kleinhardt, 157 F.R.D. 404, 405 (W.D.Mich.1994).
 
 
 23
 Neither Perry nor Governor Engler asserted that he was acting in the interests of the State when they opposed Kelley's proposed appeal. Indeed, it is difficult to see how they could have been acting in the interests of the State when they permitted the thirty-year-old PWA to go to its demise without fully exercising their right to object. The PWA was patterned on the Davis-Bacon Act of 1931, codified as amended 40 U.S.C. § 276a. Its purpose was to put union and non-union labor on an even footing in competing for state construction jobs and, like Davis-Bacon, "to combat the practice of 'certain itinerant, irresponsible contractors, with itinerant, cheap, bootleg labor, [who] have been going around throughout the country "picking" off a contract here and a contract there.' " Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 774, 101 S.Ct. 1451, 1463, 67 L.Ed.2d 662 (1981) (quoting remarks concerning Davis-Bacon in 74 Cong. Rec. 6510 (1931)). We may assume that the Michigan legislature deemed it in the State's interests to follow Congress's lead. Neither Perry nor Engler had authority to act as if these interests no longer existed. Kelley's standing to intervene and appeal therefore hinged on whether the State's interests were "adequately represented" by Perry when he decided not to appeal. See Fed.R.Civ.P. 24(a).
 
 
 24
 As will be discussed more fully below, when Kelley sought to intervene and appeal, there was a substantial question concerning the scope of ERISA's preemption clause. As far back as 1992, there were over 2,800 judicial opinions addressing ERISA preemption. See District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 135 n. 3, 113 S.Ct. 580, 586 n. 3, 121 L.Ed.2d 513 (1992) (Stevens, J., dissenting). Justice Thomas, writing for the Court in California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., supra, 519 U.S. at ----, 117 S.Ct. at 837, said that "[s]ince shortly after its enactment, we have endeavored with some regularity to interpret and apply the 'unhelpful text' of ERISA's pre-emption provision." Justice Scalia's concurrence, joined in by Justice Ginsburg, said:
 
 
 25
 Since ERISA was enacted in 1974, this Court has accepted certiorari in, and decided, no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA pre-emption of various sorts of state law. The rate of acceptance, moreover, has not diminished (we have taken two more ERISA pre-emption cases so far this Term), suggesting that our prior decisions have not succeeded in bringing clarity to the law.
 
 
 26
 Id. at ----, 117 S.Ct. at 842-43 (footnotes omitted).
 
 
 27
 This Circuit has not been a stranger to the difficult issue of ERISA preemption. See, e.g., majority and dissenting opinions in Zuniga v. Blue Cross & Blue Shield of Michigan, 52 F.3d 1395 (6th Cir.1995) and Saylor v. Parker Seal Co., 975 F.2d 252 (6th Cir.1992).
 
 
 28
 The existence of a substantial unsettled question of law is a proper circumstance for allowing intervention and appeal. Smuck v. Hobson, 408 F.2d 175, 180 (D.C.Cir.1969). Where such uncertainty exists, one whose interests have been affected adversely by a district court's decision should be entitled to "receive the protection of appellate review." Zuber v. Allen, 387 F.2d 862, 863 (D.C.Cir.1967) (per curiam). A failure to seek such protection may constitute inadequate representation warranting intervention. See Wolpe v. Poretsky, 144 F.2d 505, 507 (D.C.Cir.), cert. denied, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944). "Although diligent prosecution may not require an appeal in every case ... appeal ... should be liberally granted where the judgment of the trial court raises substantial and important questions of law in relation to its correctness." Pellegrino v. Nesbit, 203 F.2d 463, 467 (9th Cir.1953).
 
 
 29
 In Americans United for Separation of Church and State v. City of Grand Rapids, 922 F.2d 303, 306 (6th Cir.1990), we said:
 
 
 30
 We agree with the District of Columbia Circuit that a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest. Smuck v. Hobson, 408 F.2d 175 (D.C.Cir.1969).
 
 
 31
 Kelley's burden of demonstrating inadequacy of representation was minimal, not heavy. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Unlike the questionable status of the Electrical Contractors' Association in Perry I, Frank Kelley, representing the State of Michigan, has standing to argue the question of ERISA preemption of a state statute. We therefore address his appeal on the merits.
 
 Preemption
 
 32
 As we already have observed, ERISA is not a model of legislative draftsmanship. See John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank, 510 U.S. 86, 99, 114 S.Ct. 517, 525-26, 126 L.Ed.2d 524 (1993). Moreover, the sketchy legislative history is of little assistance in ascertaining congressional intent. Id. It is not surprising, therefore, that the Supreme Court looked to the dictionary definition of the term "relate," concluded that a law relates to an employee benefit plan "if it has a connection with or reference to such a plan," and interpreted these words in their "broad sense." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97-98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A number of subsequent Supreme Court decisions adopted the same reasoning. See, e.g., Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388-89, 85 L.Ed.2d 728 (1985); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-47, 107 S.Ct. 1549, 1551-53, 95 L.Ed.2d 39 (1987).
 
 
 33
 More recent Supreme Court decisions have included expressions of concern that the terms "relate to" and "connection with" have been interpreted too broadly because neither phrase has a clearly definable boundary. See, e.g., New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, ---- - ----, 115 S.Ct. 1671, 1676-77, 131 L.Ed.2d 695 (1995). These cases, adopting the logic of a Shaw footnote, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, hold that preemption does not occur " 'if the state law has only a tenuous, remote, or peripheral connection with covered plans.' " New York State Conference of Blue Cross & Blue Shield Plans, supra, 514 U.S. at ----, 115 S.Ct. at 1680 (quoting Greater Washington Bd. of Trade, supra, 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1.)
 
 
 34
 The most recent Supreme Court approach is contained in Dillingham, supra, where Justice Thomas, writing for the Court, said that "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." 519 U.S. at ----, 117 S.Ct. at 838 (citations omitted).
 
 
 35
 Moreover, there are some indications in the recent cases that the Supreme Court may end up applying traditional preemption analysis to ERISA cases, i.e., " 'where [a state] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs." John Hancock Mut. Life Ins. Co., supra, 510 U.S. at 99, 114 S.Ct. at 526 (quoting Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)); see Dillingham, 519 U.S. at ----, 117 S.Ct. at 843 (concurring opinion).
 
 
 36
 Applying the law as it presently stands and without anticipating possible future changes, we hold that Michigan's PWA has not been preempted by ERISA. We find support for this holding in the general principle that federal statutes will not be held to have preempted laws in areas of traditional state regulation unless that is the clear and manifest intent of Congress. See Metropolitan Life Ins. Co., supra, 471 U.S. at 740, 105 S.Ct. at 2389; Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309-10, 51 L.Ed.2d 604 (1977). We find more compelling support in two decisions of this Court and four decisions of other Circuit Courts of Appeals.
 
 
 37
 In Firestone Tire and Rubber Co. v. Neusser, 810 F.2d 550 (6th Cir.1987), we held that a municipal income tax, which included within its general scope contributions to employee benefit plans deducted from employees' incomes, was not preempted by ERISA. We said that "where, as here, a municipality enacts a neutral income tax of general application which applies to employees without regard to their status as ERISA participants, that tax is not preempted by ERISA." Id. at 556.
 
 
 38
 In Thiokol Corp., Morton International, Inc. v. Roberts, 76 F.3d 751 (6th Cir.1996), we held that Michigan's Single Business Tax, Mich. Comp. Laws Ann. § 208.1, et seq., which levies a tax on value added, including payments to employee benefit plans covered by ERISA, was not preempted. Once again, we relied upon the fact that the tax's effect upon the employee benefit plans was too tenuous and remote to mandate preemption. Id. at 761.
 
 
 39
 Although the facts in Firestone and Thiokol differ to some extent from those of the instant case, the facts in the four cases from other circuits are strikingly similar to those herein. Keystone Chapter Associated Builders and Contractors, Inc. v. Foley, 37 F.3d 945 (3d Cir.1994), cert. denied, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995), involved Pennsylvania's Prevailing Wage Act, which provides that not less than the prevailing wages in the locality shall be paid to all workmen on public works. Prevailing wages are determined by combining cash wages and a level of benefit contributions. Like Michigan's PWA, the law, as enforced, does not deal with specific benefits, but with their aggregate amount. In denying preemption, the Keystone court held that the plan "neither encourages nor constrains any particular kind of conduct towards ERISA plans, nor does it cross the line from wage regulation to benefit regulation...." Id. at 963. Instead, "while imposing a cost on employers, as any wage regulation will, the Act leaves employers free to structure benefit plans as they wish." Id.
 
 
 40
 In Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Department of Labor and Industry, 47 F.3d 975 (8th Cir.1995), the statute at issue was Minnesota's Prevailing Wage Law, which, like Michigan's, requires contractors to pay workers on state projects at least "the prevailing wage rate in the same or most similar trade or occupation in the area." Id. at 977. The statute does not require that an employer provide any specific level of benefits. It simply requires the employer to compensate employees at the prevailing wage rate, which is a combination of salary and benefits. Id. at 978. The court held that there was no ERISA preemption.
 
 
 41
 At issue in WSB Electric, Inc. v. Curry, 88 F.3d 788 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997), was section 1771 of California's Labor Code, which requires public works contractors to pay a prevailing rate of per diem wages determined on a county-by-county basis. To calculate the wage, the employer adds the hourly cash wage plus the total amount of employer contributions to benefit plans. The court held that references to ERISA plans in the statute does not affect the plans "but simply take them into account when calculating the cash wage that must be paid." Id. at 793. Likewise, it "does not force employers to provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all." Id. Citing both Keystone and Minnesota Chapter, supra, the court held that California's statute was not preempted. Id. at 794, 796.
 
 
 42
 The case of Burgio and Campofelice, Inc. v. NYS Dep't of Labor, 107 F.3d 1000 (2d Cir.1997), construing New York's Prevailing Wage Law, New York Labor Law § 220, is particularly pertinent to the issues now before us because the district court cited General Electric Co. v. New York State Department of Labor, 891 F.2d 25 (2d Cir.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), which dealt with the same law. At the time General Electric was decided, the New York law was construed and enforced to require that all contractors bring the cost of each of their fringe benefits into equivalence with the cost of the local prevailing benefit or pay the additional cost directly to the employee beneficiary. The statute was construed so as to require a line-by-line equivalence in benefits with each of the benefits that prevailed in the locality or the payment of an equivalent cost. See E.I.C. Elkins Constructors, Inc. v. Chiles, 872 F.Supp. 931, 938-39 (N.D.Fla.1994).
 
 
 43
 However, the New York Department of Labor asserted in Burgio that, following the Second Circuit's General Electric opinion, the Department adopted the "total package" policy which rejects the line-item approach and "simply requires employers to match the total cost of all prevailing supplements." Burgio, supra, 107 F.3d at 1004. Citing Keystone, supra, the Second Circuit held that, if this practice in fact prevailed, there was no preemption. 107 F.3d at 1010-11.
 
 
 44
 The above-cited cases from sister circuits are not, of course, binding precedent. However, the logic of their reasoning is very persuasive. Using the same logic, we hold that Michigan's PWA does not relate to any employee benefit plan within the meaning of section 514(a) of ERISA.
 
 
 45
 The district court's order denying Kelley's motion to intervene and its judgment holding that Michigan's PWA was preempted by ERISA are REVERSED. The appeals of Michigan State Building and Construction Trades Council, AFL-CIO and Donald Willard are DISMISSED WITHOUT PREJUDICE AS MOOT.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation