**Gary MILLER, Plaintiff,**

**v.**

**PPG INDUSTRIES, INC., Defendant.**

**Civil Action No. 3:02CV–534–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 3, 2002.

Donald L. Cox, John D. Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, KY, for plaintiff.

Richard S. Cleary, Craig P. Siegenthaler, Greenebaum Doll & McDonald, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

The Court now considers Plaintiff's Motion to Remand. Plaintiff filed his complaint against his employer, Defendant PPG Industries, Inc., in Jefferson Circuit Court, alleging that after he became disabled and could no longer work, Defendant failed to make proper contractual payments owed him. Defendant removed the case to federal court arguing that 29 U.S.C. § 1144(a), the Employee Retire-

ment Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq,* pre-empted all three of Plaintiff's claims and that jurisdiction in this Court was therefore proper.

This case raises difficult issues touching on both removal and preemption which are themselves distinct concepts. *Zuniga v. Blue Cross and Blue Shield of Michigan,* 52 F.3d 1395, 1399 (6th Cir. 1995). Removal under 28 U.S.C. § 1441 requires that the complaint contain a claim within the original subject matter jurisdiction of the federal district court.[1] *Syngenta Crop Protection, Inc. v. Henson,* —— U.S. ——, 123 S.Ct. 366, 370–71, 154 L.Ed.2d 368 (2002). "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted—for example under § 1144(a)—does not establish that they are removable to federal court." *Zuniga,* 52 F.3d at 1399. Thus, only if the Court can discern a federal question, is removal proper. *Wright v. General Motors Corp.,* 262 F.3d 610, 613–14 (6th Cir. 2001).

Plaintiff's complaint does not facially assert any federal claim. The doctrine of complete preemption, however, is an independent corollary to the well-pleaded complaint rule. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The original subject matter jurisdiction required to support re-

moval only exists if ERISA completely preempts any of the state law claims. *Id.* Complete preemption under ERISA can be invoked if two conditions are satisfied: (1) ERISA expressly preempts the state law cause of action under 29 U.S.C. § 1144(a), the provision creating "conflict preemption,"[2] and (2) the cause of action is encompassed by the ERISA civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B).[3] *Metropolitan Life Ins.,* 481 U.S. at 63, 107 S.Ct. 1542; *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir. 1995).

Defendant raises three separate arguments against remand, which the Court will consider in turn. In the end, even though the Court finds that only one of Plaintiff's claims are pre-empted, the Court will deny remand on the basis of that claim augmented by the Court's supplemental jurisdiction.

### I.

ERISA preempts state law claims that "relate to" any "employee benefit plan." 29 U.S.C. 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In order to find federal preemption of Plaintiff's claims, this Court must therefore overcome two hurdles, finding that an "employee benefit plan" exists and that the state law claims "relate to" that plan.[4] Plaintiff

---

1. The general removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," unless Congress specifically provides otherwise.

2. Section 1144(a) provides:

 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as

they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a).

3. Section 1132(a)(1)(B) provides, "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

4. ERISA covers "employee benefit plans," which it defines as plans that are either "an

makes three state law claims, each of which Defendant contends is preempted. Because the three claims raise different legal issues, the Court considers them independently.[5]

### A.

 Defendant's strongest case for preemption concerns Plaintiff's allegation that Defendant breached a contract by refusing "to pay certain vacation benefits which have been demanded and are due." (Pl's Compl.¶8). In response, Defendant identifies the source of Plaintiff's vacation benefits as a vacation benefits plan which, on its face, is clearly controlled by Defendant's ERISA plan.[6] (See Rowles Aff. ¶3; Def.'s Ex. B). At first glance, it appears this alone might be enough to show that Plaintiff's breach of contract claim "relates to" an "employee benefit plan." ERISA, however, does not apply to vacation plans which constitute "payroll practices," as defined by the Department of Labor. 29 C.F.R. § 2510.3–1(b). Elaborating on this regulation, the Supreme Court has held

that a "multiemployer fund created to provide vacation benefits for union members who typically work for several employers during the course of a year ... undoubtedly falls within the scope of [ERISA]." *Massachusetts v. Morash,* 490 U.S. 107, 114, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 4, n. 2, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). ERISA preemption here, therefore, depends on the source of the funds underlying Plaintiff's vacation benefits.

Defendant presents affidavits and exhibits showing that its vacation benefits are part of a comprehensive employee welfare benefit plan to which a number of affiliated employers contribute funds. Each employer contributes an amount equal to a percentage of each covered employee's salary. The plan, consequently, constitutes an independent separate fund used to pay welfare benefits for employees. Plaintiff cannot rebut these factual assertions or the legal conclusions which naturally fol-

---

employee welfare benefit plan," or "an employee pension benefit plan," or both. 29 U.S.C. § 1002(3).

An employee welfare benefit plan, in turn, is defined as:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, *or benefits in the event of sickness, accident, disability,* death or unemployment, *or vacation benefits,* apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added).

**5.** In reaching its conclusions, the Court has been guided by two principles. First, removal statutes are to be strictly construed with all doubts as to the propriety of removal resolved in favor of remand. *See Syngenta Crop Protection, Inc.,* 123 S.Ct. 366, 370. In addition, "while the determination as to the propriety of removal is based upon the plaintiff's pleadings at the time of removal, the court may pierce the pleadings and consider 'summary judgment-type' evidence such as affidavits and deposition testimony ..." *See Cavallini v. State Farm Mut. Ins. Co.,* 44 F.3d 256, 263 (5th Cir.1995); *Chamberlain v. The American Tobacco Co., Inc.,* 70 F.Supp.2d 788, 792 (N.D.Ohio 1999).

**6.** It is particularly noteworthy that the ERISA provisions affiliated with the vacation benefits plan states, ERISA "requires that the following information be provided to participants ... The plans, as defined by the regulations promulgated under ERISA and described in the proceeding section ... are employee welfare benefit plans." (Def.'s Ex. B, p. 9).

low. Based on the evidence in hand, therefore, the Court finds the Plaintiff's claim that he is owed vacation benefits is a state law claim that "relates to" an ERISA-governed "employee benefits plan," as contemplated by § 1144(a) and is therefore preempted.

### B.

■ Plaintiff next seeks relief for occupational taxes wrongfully withheld from his disability retirement payments. Plaintiff appears to contend that his disability benefits constitute "insurance payments" and, therefore, are not subject to the municipal occupational license tax on wages imposed by the City of Louisville and Jefferson County. More specifically, Section 2.3.B.1 of the Regulations of the Louisville/Jefferson County Revenue Commission, excludes all "insurance payments" from the occupational license tax and defines "insurance payments" to include "payments made to employees under a disability, sickness, or accident insurance plan." In terms of preemption, then, the question before the Court is whether 29 U.S.C. § 1144(a) preempts the "insurance payments" exception to the municipal occupational license tax.

Over the last 20 years the Supreme Court has attempted to balance the competing concerns of federalism and the expansive statutory pronouncement in 29 U.S.C. § 1144(a).[7] In one line of cases, beginning with *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court

has interpreted the words "relate to," concluding that a state law related to "an employee benefit plan, in the normal sense of the phrase, if it [had] a connection or reference to such a plan." *Id.* at 98, 103 S.Ct. 2890. In subsequent cases discussing the preemption provision, the Court has noted its extreme breadth, terming it "clearly expansive," "broad in scope," and "deliberately expansive." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

■ Apart from the line of cases applying the various doctrinal tests to assess whether a state law "relates to" an ERISA plan, the Supreme Court has also more recently sought to preserve the principle that "the preemption provision ... is not without limits," *Kentucky Assoc. of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 358 (6th Cir.2000), and has critiqued the emphasis on the ERISA text as an "uncritical literalism" that makes ERISA preemption turn on "infinite connections." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Thus, in *Travelers*, the Supreme Court held that ERISA's "relate to" language was not intended to modify "the starting presumption that Congress does not intend to supplant state law." *Id.* at 705, 115 S.Ct. 1671. The preemption analysis therefore begins by first analyzing "whether the normal presumption against pre-emption has been overcome in a particular case." *Id; see also De Buono v.*

---

7. In beginning its analysis on this question, the Court notes the Sixth Circuit's recent assessment of the myriad of confusing opinions dealing with the subject of ERISA preemption. Writing in *Kentucky Assoc. of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 357 (6th Cir.2000), that court noted,

[T]he wording of the Act combined with the obvious federalism concerns involved here make it difficult to discern clear bound-

aries. Many courts, including the Supreme Court, have commented on the vexingly broad and ambiguous nature of the provisions.

See also *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 729, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) ("observing that the provisions were not a model of legislative drafting").

*NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 814–15, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997).

To determine if this presumption has been overcome, the Supreme Court's approach requires courts to "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *De Buono,* 520 U.S. at 813–14, 117 S.Ct. 1747; *see also Egelhoff v. Egelhoff,* 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001); *Associated Builders and Contractors v. Perry,* 115 F.3d 386, 392 (6th Cir. 1997) (noting that the "most recent Supreme Court approach" requires courts to look instead at the purpose of ERISA rather than the overly expansive "relate to" test). Applying the framework, the Court finds that the municipal occupational tax exception does not implicate an area of core ERISA concern, nor does it have any notable effects on an ERISA plan. Two Sixth Circuit cases, both dealing with issues of state and local taxation in the ERISA context, support this determination.

In *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987), the Sixth Circuit considered whether an Akron, Ohio occupational tax which included within its scope, though not explicitly, contributions made by employees to their employee benefit plans, was preempted by ERISA. 810 F.2d at 551–52. Declining to find preemption, the court relied on the fact that the "tax has no connection or reference to the benefit plans. The tax commissioner has not directed any action at the plan contri-

bution or payments." *Id.* Moreover, the municipal occupational tax was simply a "neutral tax of general application." *Id.* at 554. Thus, because the ordinance taxed "income without regard to the ultimate disposition of that income," the Sixth Circuit concluded the relationship between the state law and the ERISA plan was too tenuous to justify a finding of preemption. *Id.*

More recently, in *Thiokol Corp. v. Roberts,* 76 F.3d 751 (6th Cir.1996), the Sixth Circuit considered whether a neutral statewide tax, the Michigan's Single Business Tax ("SBT"), which levied a 2.35 percent value added tax on a businesses's adjusted tax base, was preempted by ERISA. *Thiokol,* 76 F.3d 751. *Id.* at 753. The SBT expressly defined tax base to include compensation made by employers to employees' retirement and health benefit plans; contributions to ERISA plans were therefore included in computing the Michigan SBT tax base. *Id.* Looking not at the textual relationship in the statute between the state taxation and ERISA plans, but instead at the essence of the claim, the Sixth Circuit held the SBT's inclusion of employer's payments to ERISA plans in its tax base was too tenuous and remote. *Id; see also Zuniga* 52 F.3d at 1401.[8] Because the claim ultimately did not burden the ERISA plan or affect its operation in a substantial way, the court declined to find the state law was preempted.

Against this backdrop, Defendant now argues that the exception to the municipal occupational tax, which excludes from the tax a subset of payments made under insurance plans, is preempted by 29 U.S.C. 1144(a).[9] The facts before the Court, very

---

**8.** Specifically, the court wrote "we are mindful that federal courts must give due respect to the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism' particularly in the area of state taxation." *Id.* (internal citations omitted).

**9.** The Court begins by noting that this case clearly does involve an ERISA plan. In this case, all "payments made to employees under a disability, sickness, or accident insurance plan" are excluded from taxation. Section 1144(a) includes within its purview all state

much like those posed in *Firestone* and *Thiokol*, concern what is, at bottom, a tax on wages and thus falls into an area of law traditionally reserved to the states. *Firestone*, 810 F.2d at 555. Consistent with basic principles of federalism, this cuts against finding the municipal regulation is preempted. *Thiokol*, 76 F.3d at 755. In addition, the municipal occupational tax in no way infiltrates the relationship between employers or plans and their employees, but rather affects the relationship between the state and a taxpayer—an area where "ERISA has nothing to say." *Dillingham*, 519 U.S. at 330, 117 S.Ct. 832 (noting that the Supreme Court has upheld generally applicable neutral laws with incidental effects on ERISA plans).

Most importantly, looking at how the statute actually operates, the only effect of this local tax exemption on the ERISA plan is that it prevents taxation of those funds. Indeed, the ordinance is drafted to avoid hampering or interfering with ERISA's administration. It is hard to see how such a rule, though directly referencing ERISA plans, would ultimately have a "burdensome effect" on the administration of ERISA. *See De Buono*, 520 U.S. at 815–816, 117 S.Ct. 1747 (noting that a state tax which increases the cost of administering ERISA affects administration, but that alone is not enough of an effect to justify finding ERISA preemption). The effect in this case is most aptly classified as dis-crete, tenuous, incidental, and consequently insufficient to overcome the starting presumption that "Congress did not intend to supplant state law." *Travelers*, 514 U.S. at 654, 115 S.Ct. 1671. For the foregoing reasons, the Court declines to find preemption of this insurance exemption.

### C.

■ In its third challenge to Plaintiff's complaint, Defendant contends removal is proper because Plaintiff's claim for stock options owed to him under his stock option agreement is also preempted by ERISA. During the course of Plaintiff's employment, Plaintiff and Defendant entered into a Nonqualified Option Agreement. Under the agreement, Plaintiff's right to exercise his option did not expire "if the Optionee's employment terminates as a result of the Optionee's total and permanent disability." Having been adjudged by Defendant and its insurance carrier under an ERISA plan to be disabled, Plaintiff now claims he is owed these stock options under a breach of contract theory. Defendant, however, argues that because Plaintiff's status as "disabled" is determined by his ERISA-controlled long term disability benefit plan, the right to exercise the stock option is also preempted. The Court respectfully disagrees. Applying the law as it presently stands by reviewing the effect of this state law claim on the ERISA plan, the Court concludes the breach of contract claim is not preeempted.[10] *See Associated Builders*, 115 F.3d at 392.

laws that "relate to" "employee benefit plan," 29 U.S.C. § 1144(a), and subsequently defines "employee benefit plan" to include all "employee welfare benefit plans." 29 U.S.C. § 1002(3). The subset "employee welfare benefit plan" is defined elsewhere in ERISA to include in relevant part "any plan, fund, or program ... established or ... maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance* ... (A) benefits in the event of *sickness, accident, disability* ..." 29 U.S.C. § 1002(1) (emphasis added). On its face then, this local regulation seems to in-volve an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1). By referring to payments made under an insurance plan for "disability, sickness, or accident," the "insurance" exception specifically refers to the identical language which defines the scope of ERISA. The Court therefore focuses on whether preemption is appropriate.

**10.** As a preliminary matter, the Court notes that Firestone's stock option plan is not itself an ERISA plan. Several district courts which have considered this question uniformly have taken the same position. *See, e.g., Chambless*

■ As the Sixth Circuit has noted in the context of ERISA preemption, the Court "finds support for this holding in the general principle that federal statutes will not be held to have preempted laws in areas of traditional state regulation unless that is the clear and manifest intent of Congress." *Id.* In the present case, Plaintiff had a contract for nonqualified stock options which he alleges Defendant is not providing. Defendant's preemption claim is premised on the notion that, under the terms of the contract, Plaintiff is not entitled to his option. This case, therefore, is a clear cut breach of contract case and neither party appears to dispute the fact that contract law is a realm traditionally reserved to the states. *See also Firestone,* 810 F.2d 550.

Also, looking at the actual effect of the state law on ERISA, the stock option plan "neither encourages nor constrains any particular kind of conduct towards ERISA plans." *Associated Builders,* 115 F.3d at 393, *citing Keystone Chapter Associated Builders and Contractors, Inc. v. Foley,* 37 F.3d 945 (3rd Cir.1994). No aspect of Plaintiff's ERISA benefits appear to be affected by his receipt of the stock option and Defendant has provided no arguments to the contrary. The administration of ERISA will not be in any way affected by his stock option plan. Ultimately, there is nothing in the ERISA plan that is altered, affected, or diminished as a consequence of this claim for stock options.

Moreover, turning to whether this state law claim has a "mere incidental" effect on the ERISA long-term plan, or something more "burdensome," *Firestone,* 810 F.2d

at 556, the Court follows the Supreme Court's most recent guidance in this area which instructs it to look at the facts and circumstances underlying the connection. *See Egelhoff v. Egelhoff,* 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (noting that "to determine whether state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans"). The Plaintiff in this case, though also an ERISA plan beneficiary, is not suing in the capacity of an ERISA participant. In this way, the possible reference to an ERISA plan does not affect the plan in any significant way, but simply takes it into account when determining the disability status. *Associated Builders,* 115 F.3d at 386, *citing WSB Electric v. Curry,* 88 F.3d 788 (9th Cir. 1996).

In short, the contract law claim relates only to the contractual relationship between the provider and the recipient and does not touch upon the relationship between the ERISA plan and its beneficiary. The mere fact that Plaintiff's status as "disabled" is determined by an ERISA plan, does not itself allow Defendant to sweep in all contract claims also affected by that classification into federal jurisdiction under principles of preemption as well. Applying the *Firestone* framework, the Court finds that the connection between the common law contract claim and the ERISA long term disability benefits claim is precisely the type of "tenuous, remote, and peripheral" claim that *Shaw* intended to keep out from underneath 29

v. Excel Communications, Inc. *2002 U.S. Dist. LEXIS 10859 (N.D.Tex.2002);* Raskin v. CyNet, Inc., *131 F.Supp.2d 906 (S.D.Tex.2001);* Goodrich v. CML Fiberoptics, Inc., *990 F.Supp. 48, 49–50 (D.Mass.1998),* Kaelin v. Tenneco, Inc., *28 F.Supp.2d 478, 484–86*

*(N.D.Ill.1998). Further, Defendant has not argued this point and has limited his reasoning to the claim that the stock option plan sufficiently "relates to" an ERISA plan. The Court therefore considers only this argument.*

U.S.C. § 1144(a)'s preemptive reach. Because the common law contract claim does not sufficiently "relate to" the ERISA plan, the breach of contract claim to recover stock options is not preempted.

## II.

In addition to finding that Congress manifested a clear intent to completely preempt claims that are within the 29 U.S.C. § 1144(a) preemption provision, the Court must now consider whether the remaining claim for vacation benefits falls within the scope of ERISA's civil enforcement provision. 29 U.S.C. § 1132(a). *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).[11] Under 29 U.S.C. § 1132(a)(1)(B), a plan participant or beneficiary can bring a civil action to recover benefits due, to enforce rights, or to clarify its rights to future benefits under the terms of the plan. In this case, the Plaintiff is a plan participant and the Defendant is the employer providing the plan. The vacation benefits which Plaintiff is seeking to recover flow from an ERISA controlled plan. This is precisely the type of claim ERISA contemplates in the civil enforcement section. Therefore, in terms of the remaining preempted claim for vacation benefits, Defendant has succeeded in meeting this second requirement.

■ The Court has found that only Plaintiff's claim for vacation benefits is preempted. The claims related to the withheld occupational license tax and the stock options are not preempted. Nevertheless, the Court finds that the occupational license tax and stock options claims grow out of the "same nucleus of operative facts" as the vacation benefits claim. *Blakely v. United States,* 276 F.3d 853 (6th Cir.2002). This Court can adequately interpret and apply state law. Moreover, to resolve these matters in one proceeding is less burdensome upon the parties and courts generally. Therefore, the Court will exercise its discretion to consider the remaining claims under its supplemental jurisdiction. 28 U.S.C. § 1367(a).

The Court will enter an order consistent with this Memorandum Opinion.

---

11. Neither party has properly addressed the basis for this Court's subject matter jurisdiction or lack thereof. Perhaps it seemed too obvious. Moreover, the Defendant's Notice of Removal appears to be facially defective in that it states Plaintiff's claims against it are preempted by § 1144(a) of ERISA, and does not mention § 1132(a)(1)(B), as required.

*See Stewart v. Berry Family Health Ctr.,* 105 F.Supp.2d 807, 811 (S.D.Ohio, 2000). Nevertheless, because the Court may permit a defendant to cure defective allegations in its Notice of Removal, *see Tech Hills Assoc. v. Phoenix Home Life Mutual Ins. Co.,* 5 F.3d 963, 968 (6th Cir.1993), it will address the § 1132(a)(1)(B) issue.